IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

DWAIN SMITH                                                                 PLAINTIFF

v.                              Case No. 4:12-cv-268-KGB

CONWAY COUNTY, ARKANSAS,
A Public Body Corporate and Politic,
MIKE SMITH, In His Official Capacity as
Sheriff for Conway County, Arkansas,
RICK EMERSON, In His Individual and Official
Capacity as Jail Administrator for Conway County
Detention Center, JACOB ZULPO, In His
Individual and Official Capacity as Jailer for the
Conway County Detention Center, and JOE CHOATE,
In His Individual and Official Capacity as Jailer for
the Conway County Detention Center                                       DEFENDANTS

<u>OPINION AND ORDER</u>

Plaintiff Dwain Smith files this action based on events that occurred February 28, 2012, in the Conway County Detention Facility.  Mr. Smith alleges claims under 42 U.S.C. § 1983 against defendants for allegedly violating his constitutional rights under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution based on his being tased and based on an alleged denial or delay in medical care.  Mr. Smith also alleges a claim for battery under Arkansas law.  This Court has jurisdiction under 28 U.S.C. §§ 1343 and 1367.

Before the Court is Mr. Smith's motion for summary judgment (Dkt. No. 23). Defendants have responded to Mr. Smith's motion (Dkt. No. 33).   Also before the Court is defendants' motion for summary judgment (Dkt. No. 30).  Defendants allege they are entitled to summary judgment and assert the defense of qualified immunity.  Mr. Smith has responded (Dkt. No. 37).  For the following reasons, plaintiff's motion for summary judgment is denied (Dkt.

23), and defendants' motion for summary judgment is granted in part and denied in part (Dkt. No. 30).

## I.      Factual Background

On February 28, 2012, Mr. Smith was arrested in his home for delivery of a controlled substance.  Officers with the Morrilton Police Department arrested him.  Mr. Smith is a Vietnam veteran, who suffers from posttraumatic stress, chronic back pain, and pain in the knees.  He alleges that, at the time of his arrest, he informed the arresting officers about his medical condition and that they did not respond.  Mr. Smith was arrested at 9:15 a.m. and had not taken his daily medications.  He had no alcohol within 24 hours of his arrest.  He was taken to the Conway County Detention Facility in Morrilton, Arkansas, where he had previously been housed on two separate occasions.

Mr. Smith alleges that he informed the jail staff about his medical condition.  Defendants claim that he only told employees of the Conway County Detention Facility that he suffered from back pain (Dkt. No. 33, ¶ 4).  At the time of his arrest Mr. Smith was on the following medications:  *Hydrocodone* – 7.5mg., *Meloxicam* – 15 mg., *Polyethylenecol*, *Sildenafil citrate* – 100mg., *Terazosin* – 4mg., *Tizanidine* – 4mg., and *Tramadol* – 50mg.  Defendants allege that Mr. Smith only informed the center that he was taking Hydrocodone and prostate medication.

Mr. Smith was booked and placed in a cell at the jail with other inmates.  Mr. Smith alleges that while incarcerated he just laid around.  He alleges that he was not allowed to make phone calls, despite requesting to do so.

 Around 5:15 p.m. Mr. Smith started complaining that he was in pain.  He spoke with Sergeant Denise Gregory, the shift commander at that time, by jail intercom and said he was in pain and needed his medication.  He was given ibuprofen for the pain.  Mr. Smith requested to

go to the emergency room due to his back pain and migraine headaches. Ms. Gregory spoke with Rick Emerson, who at the time was the jail administrator. Mr. Emerson advised Ms. Gregory that Mr. Smith was not allowed to be taken to the emergency room. Ms. Gregory advised jailer Jansen Choate to inform Mr. Smith that he was not going to go to the emergency room.

A little while later, Mr. Choate and jailer Jacob Zulpo escorted Mr. Smith from "D" Block to "A" Block, which is two doors down. Mr. Smith did not need assistance from Mr. Choate or Mr. Zulpo during this transfer. Mr. Smith was in A Block alone. Defendants allege that Mr. Smith was moved to A Block because he was disruptive to other inmates and talked about hurting himself. Mr. Smith denies this. Defendants also allege that Mr. Zulpo was "informed by an employee on the earlier shift that the Plaintiff was moved to A Block because he was involved in an altercation with another inmate." (Dkt. No. 33, ¶ 25).

Mr. Smith spoke again with Ms. Gregory by jail intercom advising her of his pain and that he needed medical attention. Ms. Gregory told him that there was nothing she could do. She advised Mr. Smith to fill out a medical complaint, and she told him that he should call someone from home to bring his medication. Mr. Smith advised Ms. Gregory that there was no one he could call. Mr. Smith alleges that he continued to call by jail intercom, but no one responded.

A few hours later, an inmate in "B" Block called over the intercom and reported a man next door in A Block was screaming. Mr. Choate could not hear Mr. Smith until he went to the back. Mr. Smith was yelling that he was in pain and in need of medical attention. Mr. Choate asked Mr. Smith to calm down and wait for five minutes to allow him to go back up front and speak with Mr. Emerson. Defendants admit Mr. Choate spoke with Mr. Emerson about the

situation and that Mr. Zulpo talked to Mr. Emerson.  Defendants further admit that Mr. Emerson told Mr. Zulpo that he was not going to take Mr. Smith to the hospital and that, instead, Mr. Smith would see the doctor first thing in the morning.  Mr. Zulpo then told Mr. Choate that "we need to move him up here and try to give him some medicine and keep an eye on him, and do a medical observation on him." (Dkt. No. 36, ¶ 15).  Mr. Smith alleges that Mr. Emerson did not want Mr. Smith taken to the hospital because the county would be responsible for the bill.  Defendants deny this.  Later, Ms. Gregory also advised Mr. Choate to have Mr. Smith brought to the front of the jail where he could be observed.

Mr. Choate and Mr. Zulpo went back to move Mr. Smith from A Block to the observation cell pursuant to Mr. Emerson's instructions.  A medical observation cell is a holding cell at the front of the jail that allows for constant observation of an inmate.  Mr. Smith was yelling that he was in pain and needed to be taken to the emergency room.  Mr. Choate and Mr. Zulpo told Mr. Smith that there was nothing that they could do, that he was not going to the hospital, and that he needed his personal items in order to be moved to the front.  Defendants allege that, when Mr. Choate and Mr. Zulpo went to Mr. Smith's cell, he was lying down, rocking back and forth, and moaning.  Mr. Smith denies this.

Defendants allege that Mr. Zulpo attempted to place a hand on Mr. Smith's shoulder to hold him still but that Mr. Smith was resisting.  Mr. Zulpo then applied a pressure point technique to the back of Mr. Smith's ear, attempting to calm Mr. Smith down.  Defendants allege that, at this point, Mr. Smith kicked out and hit Mr. Zulpo.  Mr. Smith disputes this.  He alleges that he retreated to his bunk, against the wall, moving farther away from Mr. Choate and Mr. Zulpo.  At this point, Mr. Zulpo got a taser from Mr. Choate and told Mr. Smith he needed to comply.

4

Mr. Zulpo advised Mr. Smith that he needed to calm down and get up from his bunk or that he would be tased.  Mr. Smith advised Mr. Zulpo that he could not get up due to his pain.  Mr. Zulpo insisted that there was nothing wrong with Mr. Smith and that he must comply by getting up and getting his personal items.  Mr. Smith again advised Mr. Zulpo that he could not move and could not get up.  At this point, Mr. Zulpo tased Mr. Smith and said that he needed to get up or that he would be tased again.  Mr. Smith alleges that, before he was tased a second time, Mr. Zulpo said, "We can do this all night."  The tasering caused Mr. Smith to fall to the floor.  The tasering is a five second cycle.  The taser probes hit Mr. Smith in the chest and stuck in his abdomen.  At that time, Mr. Smith was not wearing a shirt.

Before Mr. Smith was tased a second time, he had the taser probes still in him and was lying in his bunk, stating that he could not get up.  Mr. Smith alleges that Mr. Zulpo told him that he needed to get up on his own and that they could not help him get up.  Mr. Zulpo allegedly then told Mr. Smith that he had to get up or else, which was a warning.  Mr. Zulpo told Mr. Smith that he had three seconds to get up.  Mr. Zulpo started counting down by saying, "Three, two, one. . . ."  When Mr. Smith did not get up, he was tased a second time.  Mr. Smith alleges that the tasering caused him to fall to the floor.  Mr. Smith was crying, said he could not get up, and asked for help.  He was told he had to do it on his own.  Mr. Smith states that, while being tased, he accidently kicked Mr. Zulpo.

Defendants maintain Mr. Smith continued to resist any efforts made by Mr. Zulpo to move Mr. Smith.  Defendants contend that Mr. Smith continued to scream and yell after the first tasing and would not get up to be moved.  Mr. Zulpo wrote in the incident report that, after the first tasing, Mr. Smith "continued to be out of control."  (Dkt. No. 25-1, at 52).  His incident report does not reference purportedly being kicked in the mouth by Mr. Smith.  When asked

5

during his deposition what that statement in his report meant, Mr. Zulpo testified that, after first being tased, Mr. Smith "was still kicking and screaming and yelling at us and demanding that he get an ambulance.  And, you know, he did appear to be angry, and he was upset, and he was kicking and screaming, and I could not help get him up because I couldn't get close to him.  I couldn't approach him without him kicking at us. . . ." (Dkt. No. 25-1, at 48).  Defendants admit Mr. Zulpo warned Mr. Smith several times that he would be tased and then counted to three before tasing Mr. Smith a second time.  Mr. Zulpo explained during his deposition, "And when he refused and continued to act that way, we did tase him again for a second cycle." (Dkt. No. 25-1, at 48).  Mr. Choate's incident report includes none of those details; his written account indicates Mr. Smith was lying in his bunk, claiming he could not sit up, and that, after Mr. Zulpo counted down from his request for Mr. Smith to comply with his order, Mr. Zulpo tased Mr. Smith again (Dkt. No. 25-1, at 56).

After Mr. Smith was tased for the second time,[1] Mr. Smith was able to make it to his feet by leaning against the wall, pick up his mat, and walk to the front of the jail without assistance. Mr. Smith received ibuprofen, antibiotic ointment, and band aids for the small marks left by the prongs fired by the taser.  Mr. Smith testified in his deposition that he did not go to the emergency room or see any doctor the day he was released from jail or that week and further testified that he could not recall whether he saw a doctor that month or the weeks following his release.

Mr. Smith alleges that, while Mr. Emerson was jail administrator, there were signs posted in the Conway County Detention Facility that warned inmates they were subject to being tased if

---

[1]   Mr. Smith maintains he was tased three times.  For purposes of his motion for summary judgment, Mr. Smith contends that he was tased twice.

they failed to comply with any orders of the jailers.  When Cheryl Eoff became the jail administrator, replacing Mr. Emerson, those posting were removed due to her change in policy.

Mr. Smith alleges that Mr. Emerson had a low tolerance for inmates' noncompliance. Under Mr. Emerson's policy, according to Mr. Smith, jailers were allowed to tase any inmates who refused to obey the jailer's orders.  Under Ms. Eoff's policy, the jailers were required to use diplomacy to defuse any situation, rather than going straight to the taser.  Mr. Smith alleges that Mr. Emerson repeatedly told jailers that, if any inmate was not complying with orders, the jailers were allowed to use the taser to force compliance with orders.  Defendants maintain, contrary to Mr. Smith's allegations, that Mr. Emerson authorized jailers to use a taser only if there was a hazard to a jailer's safety.

Mr. Choate began working at the Conway County Detention Facility on January 28, 2010.  Prior to working for Conway County, Mr. Choate was employed by Wendy's Restaurant. Mr. Choate was trained on jail standards when hired by Conway County.  The class lasted one week; Mr. Choate reports a portion of the class covered the use of a taser.

Mr. Zulpo started working for the Conway County Detention Facility as a jailer in June 2012.  Prior to February 28, 2013, Mr. Zulpo had not received any training on the use of the taser.  Mr. Smith alleges that Mr. Emerson told Mr. Zulpo that, if he needed a taser, he should just go get one and use it and that he and the other jailers were free to use the taser in order to get an inmate to comply.

## II.    Summary Judgment Standard

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986).  However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings.  *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact.  *Id.* at 323. The burden then shifts to the nonmoving party to establish there is a genuine issue to be determined at trial.  *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997).  A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party.  *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008).  "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law."  *Celotex*, 477 U.S. at 331.

### III.    Summary Of Arguments

Mr. Smith contends that defendants subjected him to an unlawful tasing when he was not posing any threat to the safety of officers, in violation of his rights as secured by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.  Mr. Smith claims that, at the time of the tasing, he was lying in his bunk, unable to get up due to the pain that he was experiencing.  He maintains that Conway County, Arkansas, has a policy, custom, and practice of allowing its jailers to tase inmates to get them to comply with orders issued by the jailers and that the jailers who tased him were following this policy, custom, and practice.  Defendants, in their response to Mr. Smith's motion for summary judgment, argue that Mr. Smith has not presented sufficient evidence to support an excessive force claim and that, even if Mr. Smith has presented sufficient evidence to support an excessive force claim, defendants are entitled to qualified immunity because a reasonable officer would not have known that defendants' conduct violated Mr. Smith's clearly established rights.

Defendants in their motion for summary judgment reassert these same points and contend they are entitled to summary judgment and qualified immunity as a matter of law.  Defendants claim that Mr. Zulpo did not use excessive force.  Defendants also argue that the Conway County Detention Center adequately supervised and trained its deputies, jailers, and administrators.  Defendants also assert that there was no personal involvement of Mr. Choate and Mr. Emerson and that, therefore, these defendants are entitled to summary judgment and qualified immunity.  In addition, defendants argue that Mr. Smith cannot establish that his constitutional rights were violated by a denial of medical care or even an alleged delay in medical treatment.

IV.   **Analysis**

"To state a claim under [§ 1983], a plaintiff must allege (1) that the defendant acted under color of state law, and (2) that the allege conduct deprived the plaintiff of a constitutionally protected federal right."  *Van Zee v. Hanson*, 630 F.3d 1126, 1128 (8th Cir. 2011).  In this case, Mr. Smith claims defendants acted under color of state and deprived him of his Fourth, Eighth, and Fourteenth Amendment rights.

A.   **Excessive Force Claims Against Mr. Zulpo**

Mr. Smith has sued Mr. Zulpo in his individual and official capacities as a jailer, claiming Mr. Zulpo violated his rights by tasing him, harassing him, and subjecting him to unnecessary and wanton infliction of pain.  Mr. Smith was a pretrial detainee at the time of the alleged use of excessive force; therefore, the Court will apply the objective reasonableness standard applicable to pretrial detainees under the Fourteenth Amendment.  *See Johnson–El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989).  The Eighth Circuit Court of Appeals noted: "[u]nlike convicted prisoners, the state has no right to punish [pretrial detainees]."  *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  Pretrial detainees' confinement conditions are analyzed under the due process clause of

the Fifth and Fourteenth Amendments, rather than the Eighth Amendment's "cruel and unusual punishment" standard which applies to claims brought by convicted prisoners. *Id.*

### 1.    Objective Reasonableness

The assessment of excessive-force claims brought by pretrial detainees, while grounded in the Fifth and Fourteenth Amendments, relies on the same objective reasonableness standard as arrestee claims grounded in the Fourth Amendment. *Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001) (citing *Schoemehl*, 878 F.2d at 1048-9). The use of force must be necessary to some legitimate institutional interest such as safety, security, or efficiency, and the force used must not be in excess of that reasonably believed necessary to achieve those goals. *See Schoemehl*, 878 F.2d at 1048. The relevant inquiry is whether the officials acted in an objectively reasonable manner in light of the facts and circumstances confronting them without regard to their underlying intent or motivation. *See Graham v. Connor*, 490 U.S. 386, 397 (1989). The Court should consider the reasonableness "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. Finally, the Court should consider, from the perspective of a reasonable officer at the scene, whether the totality of the circumstances justifies the use of force. *Foster v. Metropolitan Airports Comm'n*, 914 F.2d 1076, 1081 (8th Cir. 1990).

Generally, the use of force is "justified when there was a concern for the safety of the institution, the jailers, and the inmates." *Brown v. City of Golden Valley*, 574 F.3d 491, 500 (8th Cir. 2009) (citing *Hickey v. Reeder*, 12 F.3d 754, 759 (8th Cir. 1993)). The Eighth Circuit has held that "prisoners have a clearly established right to be free from a Taser shock or its equivalent in the absence of a security threat." "Tasers fire metal probes into the skin, penetrating up to half an inch. Connected by wires to the taser, the probes can deliver a 50,000

volt shock that lasts up to five seconds and causes electrical muscular disruption." *McKenney v. Harrison*, 635 F.3d 354, 362 (8th Cir. 2011) (citations omitted).  The Eighth Circuit noted that "a stun gun inflicts a painful and frightening blow, which temporarily paralyzes the large muscles of the body, rendering the victim helpless." *Hickey*, 12 F.3d at 757.  The use of a taser to ensure compliance with housekeeping regulations is not constitutionally permissible. *Id.* at 759.

The use of tasers requires sufficient justification in order for their use to be reasonable. *McKenney*, 635 F.3d at 364.  In this case, Mr. Smith claims he was subjected to excessive force by defendants when he was tased on February 28, 2012.  Here, a reasonable jury could determine that Mr. Smith complained of pain, leading defendants to attempt to move him to another cell for observation.  Ms. Smith was already housed in his own cell with no other inmates.  When defendants entered Mr. Smith's cell, he defied the direct order to get out of bed.  He stated several times that he could not move as he was in pain.  There were two officers present.  Mr. Smith was not armed, as he was already in the jail.  Viewing the facts alleged in the light most favorable to Mr. Smith, a reasonable juror could determine he was not a threat to himself or other inmates.  The Court acknowledges that defendants contend Mr. Smith was a danger to himself or the officers thereby necessitating the use of force, but Mr. Smith disputes this.  There is some evidence that Mr. Smith kicked Mr. Zulpo, but that evidence is disputed especially as to the timing of the kick in the sequence of events.  There is also a question of fact as to whether the second tasing was necessary or excessive, given the alleged sequence of events.  For these reasons, on the record before the Court, the Court determines that the evidence establishes a genuine issue of material fact concerning whether the force used against Mr. Smith was objectively reasonable in light of the facts and circumstances confronting defendants. *Mack v. Stovall*, 4:10-CV-04129, 2012 WL 1252635 (W.D. Ark. Jan. 30, 2012) *report and*

11

*recommendation adopted*, 4:10-CV-04129, 2012 WL 1252628 (W.D. Ark. Apr. 13, 2012) (citing *King v. Shoar*, No. 3:06–CV–61, 2007 WL 2066171 (M.D.Fla. July 13, 2007)("While the use of a taser is not *per se* excessive force, ... it may be unnecessary, and therefore unreasonable, for an officer to use force if a suspect if already secured")).  These questions of fact preclude granting summary judgment in favor of Mr. Smith or in favor of defendants on Mr. Smith's underlying excessive force claim.

### 2.      Extent Of Mr. Smith's Injuries

The Eighth Circuit requires the existence of an "actual injury" in order to support an excessive force claim under the Fourth Amendment. *Hanig v. Lee*, 415 F.3d 822, 824 (8th Cir. 2005).  Although *de minimis* use of force is insufficient to support a claim, *de minimis* injury does not necessarily foreclose a claim.  *Chambers v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011).  The Eighth Circuit noted that "extreme pain can be inflicted with little or no injury." *Hickey*, 12 F.3d at 757.  "Even if a taser does not require hospitalization or cause quantifiable injuries, it does cause extreme pain, and such pain may support a claim for excessive force." *Orsak v. Metro. Airports Comm'n Airport Police Dep't*, 675 F. Supp. 2d 944, 958-59 (D. Minn. 2009).  The technology of tasers does not grant law enforcement officials license to cause extreme pain when the governmental interests at stake are minimal.  *Id.* at 959.  In those circumstances, the use of a taser inflicts gratuitous pain, in violation of the Fourth Amendment. *See Buckley v. Haddock*, 292 Fed.Appx. 791, 802-803 (11th Cir. 2008) (Martin, J., dissenting) ("[A]t the very least, the Fourth Amendment prohibits the infliction of gratuitous pain and injury as a means to coerce compliance.").

The use of some force by police is reasonable when an arrestee disobeys orders. *Wanbaugh v. Fields*, 508 F. Supp. 2d 723, 728 (W.D. Ark. 2007).  The lack of injury or a minor

degree of injury is also relevant in determining whether the force used was excessive. *Id.* Moreover, the court may consider whether any injury suffered is explained by the arrestee's own actions. *See e.g., Greiner v. City of Champlin*, 27 F.3d 1346, 1355 (8th Cir. 1994).

Construing the facts in the light most favorable to Mr. Smith, the Court cannot say that, as a matter of law, Mr. Smith did not suffer injury. Mr. Smith contends he suffered injuries to his elbow due to falling off the bunk after being tased. Furthermore, Mr. Smith claims permanent scarring on his chest due to the taser burns. The taser was applied while Mr. Smith was wearing no shirt. The nature of Mr. Smith's physical injuries weighs in the fact finder's determination regarding whether the level of force was justified and may result in only a minimal damages award, if any, but the Court determines here those issues should be decided by a jury.

**B.   Failure To Intervene Claim Against Mr. Choate**

Mr. Smith has sued Mr. Choate in his individual and official capacities as a jailer, claiming Mr. Choate violated his rights by harassing him and acquiescing in Mr. Zulpo's use of excessive force against him. Defendants argue that, because Mr. Choate did not tase Mr. Smith, Mr. Smith cannot state a claim against Mr. Choate and that he is entitled to summary judgment. This Court disagrees. Although Mr. Choate did not pull the trigger to tase Mr. Smith, there appears to be no dispute that Mr. Choate provided his taser to Mr. Zulpo who, in turn, tased Mr. Smith at least twice in Mr. Choate's presence. As the Eighth Circuit Court of Appeals has observed, "[a]s of July 2006, it was clearly established that a state actor may be liable for an unreasonable seizure under the Fourth Amendment if he fails to intervene to prevent the unconstitutional use of force by another official." *Krout*, 583 F.3d at 565. Mr. Choate has a constitutional duty not to allow a fellow officer to use unconstitutional force on a pretrial detainee. There are disputed genuine issues of material fact here that preclude this Court's

awarding summary judgment to Mr. Smith or defendants on Mr. Smith's claims against Mr. Choate.

C.      **Claims Based On The Policy, Custom, And Practice**

Mr. Smith has sued Conway County which he contends operates the sheriff's department. Mr. Smith also has sued Mike Smith in his official capacity as Sheriff for Conway County, Arkansas, who Mr. Smith contends is responsible for training sheriff deputies and jailers employed at the Conway County Detention Center.  Mr. Smith has also sued Mr. Emerson in his individual and official capacity as Jail Administrator for the Conway County Detention Center. Mr. Smith asserts that these defendants are liable for an unconstitutional policy, custom, and practice relating to the use of tasers at the Conway County Detention Center.

A suit against a municipal official in his official capacity is considered a suit against the municipality itself.  *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985).  In *Monell v. Department of Social Services*, the Supreme Court held that a municipality is subject to liability under § 1983 only when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  436 U.S. 658, 690 (1978).  The Court explained that "although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 person, by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental custom even though such a custom has not received formal approval through the body's official decisionmaking channels."  *Id.* at 690-91.  A plaintiff must include allegations, references, or language by which one could infer the conduct alleged resulted from

an unconstitutional policy or custom. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (citing *Doe v. Sch. Dist. of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003)).

The Eighth Circuit has "observed an important distinction between claims based on official policies and claims based on customs. Because an official policy speaks for itself about the intent of public officials, proof of a single act by a policymaker may be sufficient to support liability." *Jenkins v. County of Hennepin, Minn.*, 557 F.3d 628, 633 (8th Cir. 2009). "In contrast to the evidence required to establish an official policy, we have emphasized that a custom can be shown only by adducing evidence of a 'continuing, widespread, persistent pattern of unconstitutional misconduct.'" *Id.* at 634 (quoting *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999)). *See also Crawford v. Van Buren Cnty., Ark.*, 678 F.3d 666, 669 (8th Cir. 2012) (same). A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible under state law for establishing final policy with respect to the subject matter in question. *Russell v. Hennepin County*, 420 F.3d 841, 847 (8th Cir. 2005) (internal quotations omitted). On the other hand, "[a] municipal custom is a practice of municipal officials that is not authorized by written law, but which is so permanent and well-settled as to have the force of law." *Id.* at 849. "Inaction or laxness can constitute government custom if it is permanent and well settled" and provided it is the moving force behind the constitutional violation. *Tilson v. Forrest City Police Department*, 28 F.3d 802, 807 (8th Cir. 1994) (citing *Monell*, 426 U.S. at 691)).

There need not be a finding that a county employee is liable in his or her individual capacity before municipal liability can attach. *Speer v. City of Wynne*, 276 F.3d 980 (8th Cir. 2002); *Parrish v. Luckie*, 963 F.2d 201, 207 (8th Cir. 1992). Where an official policy is itself unconstitutional or directs employees to take unconstitutional action, no evidence beyond a

statement of the policy and its exercise is necessary to establish § 1983 liability.  *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 389-90 (8th Cir. 2007).

A policy which does not "affirmatively sanction" unconstitutional action, and which instead relies on the discretion of the municipality's employees, is not an unconstitutional policy. *Seymour v. City of Des Moines*, 519 F.3d 790, 800 (8th Cir. 2008); *Dick v. Watonwan County*, 738 F.2d 939, 943 (8th Cir. 1984).  If a county's policy is facially lawful and does not compel unconstitutional action, the plaintiff has "the high burden of proving that the county's decision to maintain the policy was made with deliberate indifference to its known or obvious consequences." *Moyle v. Anderson*, 571 F.3d 814, 818 (8th Cir. 2009) (citing *Bd. of the County Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 407 (1997)).  "The standard for deliberate indifference is objective; a government entity is liable if it has maintained 'a policy in which the inadequacy is so obvious, and the inadequacy is so likely to result in the violation of constitutional rights' that the policymakers can be said to have been deliberately indifferent." *Moyle*, 571 F.3d at 818-19 (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).  "A showing of simple or even heightened negligence will not suffice."  *Moyle*, 571 F.3d at 818 (citing *Bryan Cty., 520 U.S. at 40*).

Here, Mr. Smith alleges an unconstitutional policy, custom, or practice.  He asserts that, under the policy of Mr. Emerson, postings were placed in the Conway County Detention Center warning inmates that they would be tased should they fail to comply with any orders of the jailers.  Mr. Smith maintains that Mr. Emerson repeatedly told jailers that, if an inmate was not complying with orders, the jailers were allowed to use the taser to force compliance with orders.

Mr. Smith alleges that the county and jail administrators were on notice of the alleged inadequacy of this policy.  There is some evidence in the record that, based upon "Tasering

Reports" and "Jailer Incident Reports," defendants had notice of prior incidents during which inmates were tased under circumstances Mr. Smith contends should have demonstrated excessive force was being used by jailers at the Conway County Detention Center (Dkt. No. 24, at 12-13). Mr. Smith cites incidents involving Mr. Choate and inmates Burnett and Battle as examples. These incidents demonstrate a disputed issue of material fact as to notice on the part of defendants.

Defendants maintain, contrary to Mr. Smith's allegations, that Mr. Emerson authorized jailers to use a taser only if there was a hazard to a jailer's safety.  Specifically, defendants "[a]dmit Defendant Zulpo stated that Rick Emerson repeatedly told jailers that if an inmate was not complying with their orders, then they were allowed to use the Taser to force compliance with their orders but assert that the Officers knew that they could not use a taser if an inmate just refused to comply with orders that each situation was different." (Dkt. No. 33, ¶17).  Although defendants do not deny "that there were signs posted concerning the behavior of inmates and informing inmates that they could be tased if they did not comply with jailers," defendants claim the jailers "understood and stated in their depositions that they could not use a taser if an inmate just refused to comply with orders." (Dkt. No. 33, ¶16).  Defendants also maintain that, based on the disputed facts in this matter, Mr. Smith posed a hazard to a jailer's safety and to his own safety during this incident.

The Court determines that, on the record before it, there are disputed issues of material fact that preclude granting summary judgment on this claim to either Mr. Smith or defendants. The Court notes there is no copy of the posted warnings in the record.  A posted warning to inmates that they could be tased for failure to comply with jailer's orders, without more, if this is in fact what the posted warning said appears unconstitutional on its face based on the Eighth

17

Circuit's holding in *Hickey v. Reeder*, 12 F.3d 754 (8th Cir. 1993). That case determines the law was clearly established prior to this incident that "[t]he law does not authorize the day-to-day policing of prisons by the use of stun guns." *Id.* Tasers are a use of force not unlike stun guns. Defendants, however, dispute that this was the practice or custom of jailers at the Conway County Detention Center and maintain jailers knew they had discretion when dealing with situations that might merit the use of a taser. On this record, based on controlling law, the Court denies summary judgment on this claim.

## D.   Claims For Failure To Monitor Or Supervise And Train

Mr. Smith alleges that Conway County, Mr. Smith, and Mr. Emerson failed to monitor or supervise sheriff deputies and jailers employed at the Conway County Detention Center, thereby resulting in an unconstitutional use of force through tasing. To establish municipal liability based on a failure to monitor or supervise, Mr. Smith must show that officials had knowledge of prior incidents of misconduct and deliberately failed to take action. *Andrews v. Fowler*, 98 F.3d 1069, 1075 (8th Cir. 1996).

Mr. Smith also asserts a failure-to-train claim. To establish a failure-to-train claim, a plaintiff must prove that: (1) the municipality's training practices were inadequate; (2) the municipality was deliberately indifferent to the rights of others in adopting the procedures, such that the municipality's failure to train reflects its deliberate or conscious choice; and (3) the alleged deficiency in training practices actually caused the plaintiff's injury. *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010). Causation generally is a question of fact, unless the question is so free from doubt as to justify taking it from the fact finder. *Id.* at 1000.

Both for a failure-to-supervise and failure-to-train claim, a plaintiff must show the municipality had notice. A plaintiff must show "that in light of the duties assigned to specific

officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390.

Although *Canton* leaves open the possibility of single-incident liability, a pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train. *Bryan Cty.*, 520 U.S. at 409. This is so because "[p]olicymakers' 'continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action – the 'deliberate indifference' – necessary to trigger municipal liability.'" *Connick v. Thompson*, __ U.S. __, 131 S. Ct. 1350, 1360 (2011) (quoting *Bryan Cty.*, 520 U.S. at 407). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.*

To prove deliberate indifference, Mr. Smith needs to show that defendants were on notice that, absent additional specified training, it was "highly predictable" that sheriff deputies and jailers such as Mr. Zulpo and Mr. Choate would be confronted by situations the training was intended to address and would make incorrect decisions. *Id.* at 1365. In fact, Mr. Smith likely needs to show that it was so predictable that failing to train sheriff deputies and jailers amounted to conscious disregard for Mr. Smith's rights. *Id.*

There is some evidence in the record that, prior to February 28, 2012, Mr. Zulpo received no training on the use of the taser. There is some evidence in the record that Mr. Emeron informed Mr. Zulpo that, if he needed a taser, to take one and use it, despite this alleged lack of

training, and that Mr. Emerson told Mr. Zulpo and other jailers to use the taser for inmate noncompliance with orders.   There is evidence in the record that signs were posted in the Conway County Detention Center warning inmates that, if they refused to comply with an order, they were subject to being tased.   There is some evidence in the record that Mr. Choate had one week of training at the time he was hired; some portion of that training covered the use of the taser, according to Mr. Choate.

There is some evidence in the record that, based upon "Tasering Reports" and "Jailer Incident Reports," defendants had notice of prior incidents during which inmates were tased under circumstances Mr. Smith contends should have demonstrated excessive force was being used by jailers at the Conway County Detention Center (Dkt. No. 24, at 12-13).   Mr. Smith cites incidents involving Mr. Choate and inmates Burnett and Battle as examples.   These incidents demonstrate a disputed issue of material fact as to notice on the part of defendants.

When viewed in the light most favorable to Mr. Smith, these alleged facts may lead a reasonable juror to conclude that officials had knowledge of prior incidents of misconduct and deliberately failed to take action.   Based on this, the Court denies summary judgment on the failure to supervise claims.   These alleged facts viewed in the light most favorable to Mr. Smith also may lead a reasonable juror to conclude that, absent additional training, it was highly predictable that sheriff deputies and jailers would be confronted by situations the training was intended to address and would make incorrect decisions.   Based on this, the Court denies summary judgment on the failure to train claims.

## E.   Qualified Immunity

Defendants argue that, even if Mr. Smith has presented sufficient evidence to support an excessive force claim, defendants are entitled to qualified immunity as to Mr. Smith's claims

against them in their individual capacities because a reasonable officer would not have known that defendants' conduct violated Mr. Smith's clearly established constitutional rights. Specifically, defendants contend that Mr. Zulpo is entitled to qualified immunity because he "perceived [Mr. Smith's] actions to be resisting his attempts to move him to a different cell and threating the inmates (sic) safety and his own safety." Defendants argue that Mr. Smith does not allege that Mr. Choate deployed the taser on Mr. Smith and, therefore, that Mr. Smith cannot establish an excessive force claim against Mr. Choate. Defendants also argue that Mr. Smith has not alleged that Mr. Emerson was present at the jail on February 28, 2012.

A government official sued in his individual capacity may raise the defense of qualified immunity. *Clay v. Conlee*, 815 F.2d 1164, 1169 (8th Cir. 1987). The doctrine of qualified immunity "protects government officials 'from liability for civil damages insofar as the official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Stepnes v. Ritschel*, 663 F.3d 952, 960 (8th Cir. 2011). When qualified immunity is asserted as a defense, the court should conduct a two-prong inquiry to determine if the defense applies and should examine: "(1) 'whether the facts that [Mr. Smith] has alleged. . . make out a violation of a constitutional right' and (2) whether the constitutional right violated 'was clearly established at the time of defendant's alleged misconduct.'" Id. (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "Unless the answer to both of these questions is yes, the defendants are entitled to qualified immunity." *Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009).

This Court acknowledges the Eighth Circuit's determination that "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Littrell v. Franklin*, 388 F.3d 578, 582 (8th Cir. 2004) (quotation omitted). As the Eighth Circuit

determined, however, it has never held "that bright lines only exist where facts as alleged are identical to what a court has previously addressed." *Williams v. Jackson*, 600 F.3d 1007, 1013, (8th Cir. 2010). Instead, "[t]he Supreme Court has clearly stated that in establishing qualified immunity, the test must be applied at a level of specificity that approximates the actual circumstances of the case." *Engleman v. Murray*, 546 F.3d 944, 949 n.4 (8th Cir. 2008). The Court will conduct this inquiry for each of the defendants claiming qualified immunity.

### 1.    Mr. Zulpo

The Court determined in its analysis above regarding claims against Mr. Zulpo that the facts, viewed in the light most favorable to Mr. Smith, make out a violation of a constitutional right. *See Craighead v. Lee*, 399 F.3d 954, 961 (8th Cir. 2005) (determining that, if the facts taken in the light most favorable to the party asserting the injury show that the official's conduct violated a constitutional right, the second question is whether the right was clearly established).

Defendants contend that the alleged constitutional right violated was not clearly established at the time of Mr. Zulpo's alleged misconduct. Defendants specifically concede "that they have not "been unable to locate any cases that have held a detention officer liable for excessive force under the particularized facts of this case -- officers responding to a cell with an inmate refusing to get up from his bunk, with an inmate that has talked about hurting himself, starting to hit his own hand, and kicking out and making contact with the officer. The jailer in this case perceived the [inmate's] actions to be resisting his attempts to move him to a different cell and threating the [inmate's] safety and his own safety and therefore Defendant Zulpo is entitled to qualified immunity as a matter of law." (Dkt. No. 31, at 7).

As an initial matter, defendants' request for qualified immunity fashioned in this way demonstrates that unresolved factual questions are intertwined with their request for qualified

22

immunity.  Mr. Smith contests the facts as defendants state them; this Court determines it is for a jury to resolve these disputed issues of material fact.  The Eighth Circuit examined the use of a taser to effectuate control over an inmate in *Mahamed v. Anderson*, 612 F.3d 1084, 1087 (8th Cir. 2010).  In that case, the court determined "[t]he factual controversies pertaining to Mahamed's conduct, [the officer's] response, [the officer's] intent, and Mahamed's injuries, are the type of issues best left for trial."  *Id*.

Moreover, this Court determines that, although a case with identical facts as alleged here may not have been previously decided, the Court concludes qualified immunity in this context does not hinge on the question of whether prior cases referenced the particular facts as alleged. The Court does not rely on the generalized right to be free from an unreasonable use of excessive force during a police seizure; instead, this Court determines that Mr. Smith has shown the right was clearly established in a particularized sense relevant to the case at hand.  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  This Court determines that, based on *Hickey v. Reeder*, 12 F.3d 754 (8th Cir. 1993), the law was clearly established prior to this incident that "[t]he law does not authorize the day-to-day policing of prisons by the use of stun guns" or, in this case, tasers.  That this case involved a taser, and not another means of inflicting force, does not take it outside the realm of having been clearly established.  *See Williams*, 600 F.3d at 1014.  The Eighth Circuit addressed the taser as a type of force in the context of an arrest and seizure under the Fourth Amendment in *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009), and in *Cook v. City of Bella Vista*, 582 F.3d 840, 851 (2009).  The Eighth Circuit examined the use of a taser to effectuate control over an inmate in *Mahamed*, 612 F.3d at 1087.  Further, it was clearly established by the time of this incident that "[t]he use of any force by officers simply because a suspect is argumentative, contentious, or vituperative' is not to be condoned."

*Shannon v. Koehler*, 616 F.3d 855, 865 (8th Cir. 2010). "The reasonableness of a particular use of force depends on the circumstances of each case, including 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 862 (quoting *Wertish v. Kreger*, 433 F.3d 1062, 1066 (8th Cir. 2006)). For these reasons, Mr. Zulpo is not entitled to qualified immunity on this record.

### 2.    Mr. Choate

The Court determined in its analysis above regarding claims against Mr. Choate that the facts, viewed in the light most favorable to Mr. Smith, make out a violation of a constitutional right. That right was clearly established as of July 2006. *Krout*, 583 F.3d at 565. For these reasons, Mr. Choate is not entitled to qualified immunity.

### 3.    Rick Emerson

Defendants assert that Mr. Emerson is entitled to qualified immunity because Mr. Smith has failed to allege that the former jail administrator was present at the jail on February 28, 2012, when Mr. Smith was tasered. "A defendant will not be held liable under 42 U.S.C. § 1983 unless he was personally involved in causing the deprivation of a constitutional right." *Triplett v. Azordegan*, 570 F.2d 819, 823 (8th Cir. 1978). In Mr. Smith's response, he does not specifically address Mr. Emerson. He states that "defendants have been placed on notice that as early as 1993, jail officials are not to use the Taser, simply because a person refuses to comply with orders. (internal citation omitted) Therefore, the defendants are not entitled to qualified immunity."

"A supervisor's failure to train an inferior officer may subject the superior to § 1983 liability in his individual capacity, 'where the failure to train amounts to deliberate indifference

to the rights of persons with whom the police come into contact.'" *Parrish*, 594 F.3d at 1002 (8th Cir. 2010) (quoting *Otey v. Marshall*, 121 F.3d 1150, 1156 (8th Cir. 1997)). A supervisor also may be held individually liable under § 1983 if he fails to supervise a subordinate who caused the violation. The standard of liability for failure to supervise is "demonstrated deliberate indifference or tacit authorization of the offensive acts." *Wilson v. City of N. Little Rock*, 801 F.2d 316, 322 (8th Cir. 1986).

The plaintiff must prove that the superior officer received notice of a pattern of unconstitutional conduct committed by subordinates, demonstrated deliberate indifference or tacit authorization of the offensive acts, failed to take sufficient remedial action, and that such failure proximately caused the injury alleged. *Parrish*, 594 F.3d at 1002. "Thus, it follows that a supervisory officer is entitled to qualified immunity for a § 1983 failure to train action unless a reasonable supervisor would have known that his training program (or lack thereof) was likely to result in the specific constitutional violation at issue." *Id.* (citing *Gold v. City of Miami*, 121 F.3d 1442, 1447 (11th Cir. 1997)).

Mr. Emerson was the jail administrator on duty the night Mr. Smith was tased, and he communicated with Mr. Zulpo and Mr. Choate about the events. There is some evidence that Mr. Emerson had, in the past, communicated to Mr. Zulpo and Mr. Choate that they were permitted under his watch to tase an inmate who failed to comply with orders. Mr. Emerson told Mr. Zulpo in the past to grab the taser and use it, despite Mr. Zulpo's lack of training with a taser. There is some evidence in the record that, prior to February 28, 2012, Mr. Zulpo received no training on the use of the taser. There is evidence in the record that signs were posted in the Conway County Detention Center warning inmates that, if they refused to comply with an order, they were subject to being tased. There is some evidence in the record that, based upon

"Tasering Reports" and "Jailer Incident Reports," defendants had notice of prior incidents during which inmates were tased under circumstances Mr. Smith contends should have demonstrated excessive force was being used by jailers at the Conway County Detention Center (Dkt. No. 24, at 12-13). Mr. Smith cites incidents involving Mr. Choate and inmates Burnett and Battle as examples. These incidents demonstrate a disputed issue of material fact as to notice on the part of defendants. Based on this evidence viewed in the light most favorable to Mr. Smith, the Court denies qualified immunity to Mr. Emerson as the jail administrator.

## F.    Denial Or Delay In Medical Care Or Treatment

Defendants maintain that Mr. Smith cannot establish that his constitutional rights were violated by a denial or even an alleged delay in medical care. Mr. Smith does not respond to this argument in his response to defendants' motion for summary judgment. The Court hereby construes the lack of a response as conceding the argument. To the extent Mr. Smith contends defendants violated his constitutional rights based on a denial of medical care or for an alleged delay in medical treatment, defendants are entitled to summary judgment.

\* \* \*

For the foregoing reasons, this Court denies Mr. Smith's motion for summary judgment, denies defendants' motion for summary judgment on Mr. Smith's claims under 42 U.S.C. § 1983 for allegedly violating his constitutional rights under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution based on his being tased, and denies defendants' requests for qualified immunity. The parties will proceed to trial on these claims. The Court grants defendants' motion for summary judgment on Mr. Smith's claims under 42 U.S.C. § 1983 for allegedly violating his constitutional rights under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution based on an alleged denial or delay in medical

care.   The Court notes that no party requested summary judgment on Mr. Smith's claim for battery under Arkansas law.

SO ORDERED this the 16th day of September, 2013.


_____
Kristine G. Baker
United States District Judge